[No. 6194–9–III.   Division Three.   March 26, 1985.]

PALOUSE SEED COMPANY, *Respondent,* v. AETNA INSURANCE COMPANY, *Appellant.*

*William Goss, Jr.,* and *Turner, Stoeve, Gagliardi & Goss,* for appellant.

*Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo,* for respondent.

GREEN, C.J.—Aetna Insurance Company appeals from a summary judgment in favor of Palouse Seed Company and the denial of its motion for summary judgment. The question is whether Aetna's insurance policy covers a judgment in favor of Palouse Seed for damages against Aetna's insured, Stanley Moore. The trial court found there was coverage. We reverse.

Moore, d/b/a Accent Construction & Design, contracted with Palouse Seed for construction of four prefabricated steel buildings in Tekoa. A dispute developed between

Moore and Palouse Seed and, before any of the buildings were completed,[1] Moore walked off the job. Palouse Seed sued the Moores (hereafter Moore) and obtained judgment for

(a) Building No. 1—Cost of curing deficiencies in the amount of $116,675.00;

(b) Building No. 1—Loss of use and [*sic*] and/or loss of profits in the total amount of $89,100.00;

(c) Building No. 3—Cost of completion, $8,189.21;

(d) Building No. 4—Cost of completion, $6,844.96;

(3) Plaintiff's attorney's fees under the aforesaid lien statute in the reasonable sum of $20,000.00; or a total judgment in favor of the Plaintiff is the sum of $240,809.17.

The court's findings which are part of the record here show the bases of the award were: (1) fraudulently representing the quality of workmanship and date the buildings would be complete; (2) breach of implied and express warranties of fitness for their intended use; (3) negligent construction; and (4) breach of contract for failure to timely complete the buildings and correct improper construction work.[2]

Moore tendered the defense of that action to Aetna which insured Moore under a comprehensive general liability policy. Aetna declined the tender asserting the policy did not cover the damages. After entry of the judgment, Moore assigned his rights against Aetna to Palouse Seed who then brought this declaratory judgment action against Aetna, claiming

*That as a direct result of said Judgment, Findings of Fact and Conclusions of Law entered by the Superior Court of Whitman County, State of Washington, in Col-*

---

[1]Building 1 was substantially completed; building 2 was 65 percent completed; and buildings 3 and 4 were completed only to the extent of the foundation.

[2]The action was also brought against Star Manufacturing Company who supplied the prefabricated steel buildings under a dealer agreement with the Moores. Palouse entered into a settlement with Star which was approved by the court in part on the basis "the liability issues as to Defendant Star would more likely than not be substantially resolved in Star's favor should the matter continue to proceed to trial."

fax, Washington, Palouse Seed Company alleges upon information and belief that it has insurance coverage under the insurance policy issued by [Aetna] to Stanley Moore, and as a result of the issuance of said policy, Plaintiff is entitled to payment of up to $100,000.00 property damage on each occurrence as determined in said Judgment and Findings.

(Italics ours.) Aetna denied coverage existed under its policy. On cross motions for summary judgment, the court found coverage and granted judgment for Palouse Seed. Aetna appeals.

It is Aetna's position the damages Palouse recovered against Moore are not covered by the policy. It asserts the policy provided coverage for physical damage caused by the insured's faulty product but not the cost of correcting deficiencies in the product. It is further argued the damages awarded to Palouse are specifically excluded by the policy.

Palouse concedes the policy does not cover damages for breach of contract. It contends, however, as the court held on summary judgment, there was coverage based on (1) Moore's negligence because the policy did not specifically exclude that theory and (2) breach of warranty because the exclusions in the policy were ambiguous, thereby giving rise to the rule that all ambiguities are construed in favor of the insured. It is further argued the court was correct in concluding none of the exclusions apply to the facts here.

We do not reach the parties' contentions with respect to the exclusion issue because we do not find the damages recovered by Palouse against Moore fall within the coverage section of the policy. That section states:

The company will pay on behalf of the insured all sums which the insured . . . shall become legally obligated to pay . . . because of
bodily injury or
property damage
to which this insurance applies, caused by an occurrence
. . .

"Occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to conditions,

which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Accident" means "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause'". *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 215, 608 P.2d 254 (1980) (quoting *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 358–59, 65 N.W.2d 122 (1954)). The term "occurrence" has a meaning broader than "accident" and may apply to a mishap which is negligent. However, it must nevertheless result in unintended consequences. *Yakima Cement,* at 217. In other words,

> In order for an act to constitute an occurrence under the policy it must give rise to property damage "neither *expected* nor intended from the standpoint of the insured". . . . "[E]xpected" means "more likely than not to occur".

*Medina v. Transamerica Ins. Co.,* 37 Wn. App. 360, 365, 680 P.2d 69 (1984). *See also Gruol Constr. Co. v. Insurance Co. of N. Am.,* 11 Wn. App. 632, 634, 524 P.2d 427 (1974).

The damages recovered by Palouse for cost of completion, curing deficiencies, loss of use and lost profits all flowed from Moore's "walking off the job". They should have been expected from Moore's breach in failing to carry out his contractual obligations to Palouse. Palouse argues the award of damages for building 1 stemmed from Moore's negligent workmanship. Nonetheless, these damages were designed to reimburse Palouse for Moore's failure to correct deficiencies in the building. The cost of curing those deficiencies as well as loss of use and profits were reasonably to be expected when Moore walked off the job. Thus, they do not fall within the term "occurrence". *See Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 624–25, 681 P.2d 875 (1984).

Likewise, attorney fees are not recoverable. As pointed out by Palouse, Moore filed his lien to secure an award of attorney fees in the event he won his case against Palouse. Thus, when Palouse recovered attorney fees for defending

against this lien, that recovery was the result of an intentional act by Moore with the consequences to be expected if his defense failed.

Neither do the findings giving rise to the prior judgment support the contention there was *property* damage within the terms of the policy. They only state Moore was negligent in his construction work because the buildings did not comply with building codes, specifications or standards of the industry. He simply breached his contract.

In *Yakima Cement* the court held consequential damages resulting from the installation of defective panels in a building were not recoverable because there was no evidence of damage to or a reduced value of the building. Neither are there findings here that will support an award of consequential damages. While it was argued in this appeal that a leaky roof on one of the buildings damaged the interior of the building, including ceiling insulation, there were no findings entered in the prior action to this effect; hence, this argument will not be considered. As evidenced by Palouse's complaint, this declaratory judgment action is based directly upon the findings and conclusions in that action. Thus, we find an absence of property damage within the terms of the coverage section of the Aetna policy.

Reversed.

McINTURFF and THOMPSON, JJ., concur.