**Richard HOUTZ and Robert Jeffrey Etheridge, Plaintiffs–Appellants,**

v.

**UNION INSURANCE COMPANY, Defendant–Appellee.**

No. 92CA0362.

Colorado Court of Appeals, Div. IV.

March 11, 1993.

Rehearing Denied April 8, 1993.

Certiorari Granted Dec. 27, 1993.

Schey & Schey, P.C., Donald H. Alspaugh, James H. Nelson, Longmont, for plaintiffs-appellants.

Zupkus & Ayd, P.C., Richard L. Angell, Denver, for defendant-appellee.

Opinion by Judge PLANK.

Plaintiffs, Richard Houtz and Robert Jeffrey Etheridge, appeal the summary judgment entered in favor of the defendant, Union Insurance Company (Union), on plaintiffs' claim for declaratory relief. We reverse.

Houtz and Etheridge were severely injured in an auto-pedestrian accident. At the time of the accident, they were loading a disabled truck onto a vehicle transport trailer owned by their employer, and insured with the defendant, Union. They were struck by a passing car. Houtz suffered a traumatic amputation of his left leg and a fracture in his right leg; Etheridge suffered a fracture in both legs and a closed head injury. All parties stipulate that each plaintiff has suffered damages in excess of $300,000.

The driver of the car that struck the plaintiffs was insured by a insurance policy providing coverage up to $100,000 per person, $300,000 per accident. Each plaintiff collected $100,000 under this policy. In addition, Houtz collected $27,500, and Etheridge collected $12,500, from persons liable for the accident. Plaintiffs then sought to recover under the Union policy for underinsured motorist benefits.

The Union policy provides uninsured/underinsured motorist (UM/UIM) coverage of up to $300,000 per accident. The limit of liability section for UM/UIM coverage in Union's policy provides that it will pay the least of three alternatives:

a. The limit of insurance for uninsured motorist coverage shown in the Declarations.

b. The difference between the limit of this insurance and all amounts paid to an insured by or for anyone legally liable for damages resulting from bodily injury . . .

c. The amount of damages sustained but not recovered.

Union contends that Houtz and Etheridge were underinsured by $60,000, and has paid this amount to the plaintiffs. Plaintiffs accepted the $60,000 on the condition that they could still pursue their claim that they are entitled to the entire $300,000 policy limits, prorated between them.

The plaintiffs contend that the trial court erred by granting summary judgment in favor of the defendant. We agree.

Union calculates the amount of underinsurance benefits owed under the above section (b) of the UM/UIM limits of liability by first adding together the amount of money each plaintiff received for damages. Here, that is $200,000 in insurance benefits ($100,000 each), plus $27,500 and $12,500 in other payments, totalling $240,000. It then subtracts this from the $300,000 UM/UIM policy benefits, for a total of $60,000.

Plaintiffs, alternatively, calculate damages by deducting the insurance benefits received by each plaintiff individually from the policy limits. Thus, if the $127,500 total received by Houtz is subtracted from the $300,000 policy limits, he is underinsured by $172,500, and if the $112,500 received by Etheridge is subtracted from $300,000, he is underinsured by $187,500. Plaintiffs therefore claim that they are underinsured $360,000. Since this amount is greater than the policy limits, plaintiffs contend that Union is required to pay its full policy limits of $300,000, under the above section (a) of limit of liability clause.

Accordingly, the question before us is whether, under the Union policy regarding UM/UIM benefits, is it proper for Union to aggregate the amount of damages received by both Houtz and Etheridge to determine what amount they are underinsured, or must Union determine the amount each is underinsured separately? We conclude that a separate determination of underinsurance is required.

### A.

■ We agree with the defendant that pursuant § 10–4–609, C.R.S. (1987 Repl.Vol. 4A), an insurer is required only to offer underinsurance coverage calculated by aggregating the amounts received by the entire class of insured injured in a single accident.

Section 10–4–609(5), C.R.S. (1987 Repl.Vol. 4A) provides that the liability of an insurer under a UM/UIM policy is the lesser of, "(a) The difference between the limit of unin-sured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or (b) The amount of damages sustained, but not recovered."

The appropriate construction of a statute is a question of law. *People v. Terry,* 791 P.2d 374 (Colo.1990). A court must construe a statute to determine the intent of the general assembly. *Kern v. Gebhardt,* 746 P.2d 1340 (Colo.1987). And, if the statute is unambiguous, it is improper to go beyond the accepted meaning of the words in the act. *City & County of Denver v. Howard,* 622 P.2d 568 (Colo.1981). As well, if the language of the statute is plain, its meaning clear, and no absurdity results, the court should never strain an interpretation beyond the common meaning. *Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991).

We hold that the statute is unambiguous and contemplates that an insurer may aggregate the amount of damages paid to all of its insured in determining the amount it owes as underinsured motorist benefits.

### B.

■ Nevertheless, we accept plaintiffs' contention that Union's policy requires it to calculate separately the amount an individual insured is underinsured.

The Union policy language differs from the language of the statute because section (b) requires all amounts be paid to "an insured." We hold that section (b) of the above quoted policy language is ambiguous and, therefore, construe the document in favor of broader coverage and against the drafter.

An insurance policy is a contract, to be interpreted to carry out the intent of the parties, and the language of the policy must be read as a whole. *Urtado v. Allstate Insurance Co.,* 187 Colo. 24, 528 P.2d 222 (1974). Like any other contract, the words and phrases in an insurance policy are to be given their plain, everyday meaning. *In re Estate of Daigle,* 634 P.2d 71 (Colo.1981). Obscure definitions and forced construction should be avoided. *Allstate Insurance Co. v. Starke,* 797 P.2d 14 (Colo.1990). When, however, a word or term in a policy is susceptible

to more than one reasonable meaning, it is ambiguous. *Hecla Mining Co. v. New Hampshire Insurance Co.,* 811 P.2d 1083 (Colo.1991).

■ Ambiguities in an insurance contract are properly construed against the drafter, and in favor of the insured. *Wilson v. Automobile Owners Association Insurance Co.,* 148 Colo. 550, 366 P.2d 654 (1961); *Beeson v. State Auto. & Casualty Underwriters,* 32 Colo.App. 62, 508 P.2d 402 (1973), *aff'd,* 183 Colo. 284, 516 P.2d 623 (1973).

■ Both plaintiffs and defendant have made reasonable arguments supporting their interpretation of the phrase "an 'insured' " in (b) of the limits of liability section for UM/UIM coverage.

Defendant contends that "an 'insured' " is a defined term in the policy referencing the class of people insured under the contract. Plaintiffs argue that the indefinite article "an" placed before the word "insured" refers only to one insured, and not a plurality of insureds.

The general definitions section of the policy provides the following:

'[i]nsured' means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. *Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought.* (emphasis added)

There are two other "Limit of Insurance" sections in the policy (under the Liability Coverage and the Garagekeepers Coverage sections), neither of which contain the phrase "an 'insured' ".

Defendant argues that this definition clearly show that the phrase "an 'insured' " refers to a class, and not each individual insured.

We, however, find plaintiffs' interpretation of "an 'insured' " equally reasonable. Under plaintiffs' interpretation, "insured," standing alone, does reference the class of all persons insured under the policy. However, by modifying the defined phrase "insured" with "an," the meaning of the language becomes "one member of the class of insured."

"An" and "a" are forms of the word "one." When used before a noun, "an" or "a" refer to a singular indefinite thing, object, or person. "A" seldom denotes plurality, but may refer to plural objects if a modifier, such as "a few" or "a great many," is interposed. 1 *Oxford English Dictionary* 1 (2d ed. 1989); *Black's Law Dictionary* (6th ed. 1990); *Random House Webster's College Dictionary* (1991).

Thus, while " 'insured' " refers to a class, "an 'insured' " can reasonably be interpreted to mean an individual member of the class of all insured. Hence, the language is ambiguous, and we interpret the policy against the drafter, Union, and in favor of the plaintiffs.

The judgment is reversed, and the cause is remanded for further proceedings.

JONES and MARQUEZ, JJ., concur.