LUCERO, Circuit Judge,
dissenting.
The result in this case is harsh, but it is improperly so. Because the majority denies Timothy Berry the very coverage for which he paid premiums, thus creating a windfall for Carolina Casualty Insurance Company (“Carolina Casualty”), I respectfully dissent. What the majority does here is create an escape hatch by which insurers can promise coverage, collect premiums, and yet avoid responsibility to the named insured by redefining notice in a manner inconsistent with the insurance contract and Colorado law.
I agree with the majority that the Tester Letter and the Malpractice Lawsuit are “logically or causally connected” and thus constitute a single “Claim” under the policy at issue. (Majority Op. 812, 813-814.) However, I disagree with the majority’s conclusion that delivery of the Tester Letter to Seth Murphy constituted notice to an insured under the policy’s terms. (Id. at 813-815.)
In construing the policy’s definition of “Insured,” the majority opinion misapplies Colorado law. At a minimum, that definition is ambiguous as to whether a former stockholder is an insured for notice purposes. I would resolve this ambiguity against Carolina Casualty, and hold that Murphy was not an insured acting within the scope of his duties to Berry & Murphy, P.C. at the time he received notice of Oksana and William Burkhardt’s claim. It was Berry who was the first insured acting within the scope of his duties on behalf of the premium-paying insured to receive notice of the Burkhardts’ claim. Because Berry both received notice and advised the defendant-insurer within the policy period, the district court’s grant of summary judgment to Carolina Casualty was erroneous.
I
As I do not take issue with the majority’s factual recitation, I repeat only a few key facts. Under the policy, a claim is “deemed to have been first made at the time notice of the Claim is first received *817 by any Insured.” “Insured” is defined in relevant part to mean “any individual ... who was a ... stockholder ... of the ... Predecessor Firm, but solely while acting within the scope of their duties on behalf of the ... Predecessor Firm.” It is undisputed that Murphy was once a stockholder of Berry & Murphy, P.C. and that Berry & Murphy, P.C. is a “Predecessor Firm” to Timothy H. Berry, P.C., the “Named Insured.” However, the definition of insured contains a further limitation: A former stockholder is only an insured “while acting within the scope of their duties on behalf of the ... Predecessor Firm.”
Murphy received the Tester Letter, which put him on notice of the Burkhardts’ malpractice claim, on January 26, 2007, nearly a year after he left Berry & Murphy, P.C. The Tester Letter was addressed to Murphy at his new firm, Richmond Sprouse & Murphy, LLC, and Murphy forwarded the letter to his new firm’s insurer (coincidentally, also Carolina Casualty). Berry, who remained a stockholder of the named insured, did not receive notice of the Burkhardts’ complaint until nearly a year and a half later, on July 28, 2008.
II
What the majority does is conflate two inquiries, coverage and notice. Although the policy utilizes the same definition of an “Insured” for various purposes, that definition’s use of the phrase “but solely while acting within the scope of their duties” must necessarily be read in different time contexts for coverage and notice. Because a claims made policy is under consideration, assuredly the law firm is covered for liability incurred by previous stockholders and employees for past acts. And because Murphy was a stockholder at the time some of the predicate acts of negligence are claimed to have occurred, he also is covered. The majority goes off track when it comes to notice. It does so by failing to recognize that a former stockholder of a law firm not presently in privity with the named insured cannot be said to be acting within the scope of his duties to the previous firm for notice purposes. The majority’s reasoning is tantamount to holding that service of process on Berry could be accomplished by serving his former partner. No one would seriously insist that such notice was proper let alone would satisfy due process requirements. Yet, the majority’s unfortunate construction of this insurance contract permits the same result.
The majority contends that “Insured” means “an individual after he has left the law firm if the claim involves that individual’s acts or omissions that occurred while at the law firm.” (Majority Op. 815.) But this reading is wholly unmoored from the text of the policy and violates Colorado jurisprudence regarding insurance contract interpretation.
As with any contract, Colorado courts construe insurance policies “to promote the intent of the parties.” State Farm Mut. Auto. Ins. Co. v. Stein, 940 P.2d 384, 387 (Colo.1997). “Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself.” Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co., 874 P.2d 1049, 1055 (Colo.1994). Courts should “not rewrite a contractual provision that is clear and unambiguous, but must give effect to the plain and ordinary meaning of its terms.” Wota v. Blue Cross & Blue Shield of Colo., 831 P.2d 1307, 1309 (Colo.1992) (citation omitted). “However, where there is ambiguity or uncertainty as to coverage, courts should construe the policy in favor of the insured.” Republic Ins. Co. v. Jemigan, 753 P.2d 229, 232 (Colo.1988).
*818 Applying these rules of contract interpretation, Murphy was not an insured when he received notice of the Burkhardts’ claim. An “individual ... who was a ... stockholder ... of the ... Predecessor Firm” is an insured, “but solely while acting within the scope of their duties on behalf of the ... Predecessor Firm.” Because the latter limitation does not employ words with technical or specialized meanings, we should adopt “the plain and ordinary meaning of its terms.” Wota, 831 P.2d at 1309. In ordinary English usage, stating that Murphy is an insured, “but solely while acting within the scope of [his] duties on behalf of’ Berry & Murphy, P.C., means that Murphy is not an insured while acting outside the scope of his duties on behalf of that firm. In other words, Murphy is an insured for the purposes of certain acts (acts committed within the scope of his duties on behalf of his former firm) but not others (acts committed outside the scope of his duties). There is no dispute that Murphy was not acting on behalf of Berry & Murphy, P.C. when he received the Tester Letter; thus notice to him was not notice to an insured.
According to the majority, “but solely while acting within the scope of their duties on behalf of’ a predecessor firm “cannot mean that an individual is an insured only while acting on behalf of’ a predecessor firm. (Majority Op. 814.) Yet that is precisely how “Insured” is defined in the policy.
This policy definition is rejected by the majority through utilization of “the general rule of contract construction that a court should seek to give effect to all provisions so that none will be rendered meaningless.” Pub. Serv. Co. v. Wallis & Cos., 986 P.2d 924, 933 (Colo.1999) (quotation omitted). We are told by the majority that “[i]f ‘insured’ were interpreted to mean that an individual was an insured only while acting within the scope of business of the named insured, it would be paradoxical to define ‘insured’ to include former employees.” (Majority Op. 815.)
But interpreting the definition of insured consistent with its ordinary meaning does not render the clause at issue meaningless; it simply makes it unlikely that a former stockholder can receive notice of a claim. Only if it is established that a former stockholder has given notice in fact to his previous employer may an issue of notice in this context be properly raised. The defined term “Insured” is used throughout the policy. And although the plain meaning of the former stockholder clause would rarely carry force with respect to the policy’s notice provision, it fits perfectly well in other contexts. For example, the policy defines “Professional Services” in part as services “rendered by an Insured solely as a lawyer, mediator, arbitrator, or notary public for others.” “Professional Services” would thus include services rendered by an individual who was a stockholder of a predecessor firm, but solely while acting within the scope of their duties on behalf of the predecessor firm as a lawyer, mediator, arbitrator, or notary public for others. That is, “Professional Services” refers to services rendered by a person who is now a former stockholder, but only those services that the former stockholder rendered while acting on behalf of the predecessor firm.
Moreover, the plain text meaning of the former stockholder clause can be given effect with respect to the policy’s notice provision. An individual can be both a former stockholder and acting on behalf of her former law firm in certain circumstances. An individual might semi-retire from the practice of law and renounce stockholder status, but take occasional cases on behalf of her former firm on a contract basis. The ordinary meaning of *819 the definition of insured cannot be dispatched simply because its operation is unlikely; rather, it must be meaningless. See Pub. Serv. Co., 986 P.2d at 933.
Further, in rejecting the plain text construction of the former stockholder clause, the majority fails to apply Colorado case law holding that policy language must be construed in favor of the insured where it is “susceptible to more than one reasonable interpretation.” Id. at 931. I submit that the ordinary meaning of the former stockholder clause is a reasonable interpretation. Although the majority’s construction comports with the general understanding of a claims made policy, it ignores the policy’s plain text. Absent an absurd result, see Huizar v. Allstate Ins. Co., 952 P.2d 342, 345 (Colo.1998), we are not free to “rewrite, add, or delete provisions in our interpretation,” General Sec. Indem. Co. v. Mt. States Mut. Cas. Co., 205 P.3d 529, 532 (Colo.Ct.App.2009). It is not absurd for an insurance policy to provide coverage for the prior acts of a former stockholder while not treating her as an insured for notice purposes.
“The majority opinion is not simply interpreting what this insurance contract covers; it is interpreting what the majority thinks the insurance contract ought to cover.... [W]e should not rewrite insurance contracts based on what we think the insured might have intended.” Fire Ins. Exch. v. Sullivan, 2009 WL 1477715, — P.3d -,---, 2009 ColoApp. LEXIS 994, at * 17-18 (Colo.Ct.App. May 28, 2009) (quotation omitted) (adopting the approach of a Maryland dissent in applying Colorado contract law).
Ill
Murphy was not an insured when he received the Tester Letter. Thus, the Burkhardts’ claim cannot be deemed to have been made with delivery of that letter. Instead, the evidence shows that the claim was first made to an insured on July 23, 2008, when Berry accepted service of the Burkhardts’ complaint. The policy covers claims made from February 6, 2008, to February 6, 2009. Because the Burkhardts’ claim was made within the policy period, I would reverse the district court’s grant of summary judgment in favor of Carolina Casualty and remand for further proceedings.